WILLIAM ARND, Appellee, v. ARTHUR GRELL, Appellant.

CORPORATIONS: Stockholders—Liability on Unpaid Installments. A
1   subscriber for corporate shares of stock who executes to the corporation his negotiable promissory note therefor may not be said to owe an ''unpaid installment'' on his stock *after* the corporation has negotiated the note to a holder in due course. (See Book of Anno., Vol. 1, Sec. 8412, Anno. 1.)

CORPORATIONS: Stockholders—Liability—Fraud Pleadable Against
2   Corporate Creditors. One who is fraudulently induced to subscribe

for corporate stock and to execute his negotiable promissory note in payment therefor may plead said fraud against a creditor of the corporation who, by indorsement, became a collateral security holder of the note, *with full knowledge that it was given in payment for stock,* (1) whether the creditor sues on the *note* or (2) whether the creditor sues on the theory (conceding, arguendo, its legal permissibility) that the indorsement of the note worked an assignment to him of the corporation's right of action against the subscriber for unpaid installments of stock.

**CORPORATIONS:   Stockholders—Unpaid Installments on Stock—Procedure to Enforce.**   The statutory liability of a corporate stockholder on the unpaid installments of his stock is not enforcible, after the corporation has passed into the hands of a trustee in bankruptcy, by an individual corporate creditor for his own sole benefit, but by an appropriate action for the benefit of *all* creditors.

**Headnote 1:** 14 C. J. p. 1043.  **Headnote 2:** 14 C. J. p. 1097.  **Headnote 3:** 7 C. J. p. 249.

*Appeal from Pottawattamie District Court.*—E. B. WOODRUFF, Judge.

DECEMBER 15, 1925.

ACTION at law upon a promissory note for $500. The answer pleaded fraud in the inception of the note, and that the plaintiff was not a holder in due course. Thereupon, the plaintiff filed an amendment to his petition, wherein he abandoned his cause of action upon the note, and purported to claim recovery against the defendant as a stockholder in a corporation of which the plaintiff was creditor. The defendant thereupon pleaded substantially the same fraud as in the original answer. At the close of all the evidence, the court directed a verdict for the plaintiff, and the defendant appeals.—*Reversed.*

*C. E. Swanson,* for appellant.

*George H. Mayne,* for appellee.

EVANS, J.—I. The plaintiff sued upon a negotiable promissory note for $500, duly signed by the defendant. Encounter-

ing an answer which set up fraud at the inception of the note, the plaintiff abandoned his original petition, and filed an amendment. He averred therein that the defendant was a subscriber for five shares of capital stock in Nielsen Aero Company, a corporation; that he executed the note set out in plaintiff's petition as evidence of his indebtedness for said subscription; that thereafter the corporation borrowed from the plaintiff the sum of $1,000, and on a later date the further sum of $500, and, to secure the payment of such loans, the said corporation "indorsed and assigned to this plaintiff the said note for $500 set out in the original petition as collateral security for the indebtedness of the Nielsen Aero Company to plaintiff, * * * and that said plaintiff made said loan to the Nielsen Aero Co., relying upon the said collateral security, and relying upon the fact that the said note of this defendant represented a subscription to the capital stock of the Nielsen Aero Co." It is further averred that shortly thereafter the corporation went into bankruptcy, and that the plaintiff received dividend on his indebtedness to the amount of $37.90, and no more. The final paragraph of the petition is as follows:

"That the said $1,500 as evidenced by the two (2) promissory notes from the Nielsen Aero Co. to this plaintiff was loaned by said plaintiff to the said Nielsen Aero Co. *in reliance upon the collateral pledged as security* for said indebtedness, and in reliance upon the indebtedness evidencing the subscription to the capital stock of the said Nielsen Aero Co. by this defendant, as evidenced by the promissory note set out in plaintiff's petition, and that the assignment of said note, as set out in plaintiff's petition, to this plaintiff as collateral, *constituted an equitable assignment to this plaintiff of the said stock subscription of defendant and of the indebtedness evidencing the same,* and that, by reason of the facts hereinbefore stated, this defendant is estopped from denying his liability evidenced by said note to this plaintiff."

The evidence is that the note in suit was given by the defendant in part payment for a subscription for shares of stock in such corporation. He subscribed for 10 shares at the par value of $100, paying therefor $500 in cash and bonds, and executing his note for the remainder. Within a few months there-

after, the company went into bankruptcy, and was adjudged bankrupt, and was virtually without assets. The plaintiff herein was recognized in the bankruptcy court as a secured creditor, and was permitted to hold his collateral. Evidence was introduced on the part of the defendant, tending to show that he was grossly defrauded by representations which induced his subscription and his execution of the note. The opening statement in appellee's argument is:

"This action is *not* on a promissory note, as stated by appellant, but on the cause of action as set out in the amended and substituted petition."

One theory of the plaintiff's is that the indorsement of the note by the corporation to the plaintiff amounted to an equitable assignment of the corporation's cause of action against the defendant for his unpaid subscription to the shares of stock. A further theory advanced in argument by counsel, though not in the pleading, is that the plaintiff is entitled to recover from the defendant under the provisions of Sections 8394 to 8397, inclusive, Code of 1924, on the theory that plaintiff is the creditor of the corporation, and that the defendant is a stockholder, indebted to the corporation for unpaid subscription for shares. The final summing up of appellee's brief is:

"It is the clear intention, both of the statute above cited and of the common law, to make the unpaid installments on capital stock liable for debts of the company; and in the case at bar, the note itself, as representing the unpaid installment, was specifically pledged to this plaintiff as a creditor of the company, and the right of plaintiff to recover thereon seems clear."

The result is that the appellee plaintiff will neither commit himself to the ownership of the note nor to a denial of such ownership. Neither will he commit himself to a reliance upon the statute without regard to the collateral, nor to a reliance upon the collateral without regard to the statute. The statute furnishes no aid to the plaintiff as a holder of collateral; nor has he any need of the statute if he relies upon his collateral. If he relies upon his collateral, however, we see no way of escape for him from meeting the issue of fraud tendered in the answer. If the facts were such that, at the time he acquired the note, he could not have become holder in due course by purchase, then

for the same reason he could not become a *collateral* holder in due course. Nor could he improve his position by acquiring, as a mere assignee, from the corporation a cause of action against the stockholder. The evidence of plaintiff is of the same character as it would have been if he were trying to recover upon the note as collateral. His only evidence of the transaction with the corporation is that he took the note, with others, as security for his loan. The allegation in his petition that an equitable assignment was intended is purely argumentative. There is no evidence to sustain it as a fact, as distinguished from the argument. If there were, we do not perceive how a so-called equitable assignment could be available to the plaintiff in a law action. Nor, on the other hand, do we perceive how any gain could accrue to the plaintiff if such assignment had been reduced to a formal writing. Whatever the form of such assignment, whether legal or equitable, oral or written, his rights thereunder would be those of a mere assignee, and subject to any defense which was good against the assignor. One difficulty in the presentation of plaintiff's case is that he does not stand consistently upon any *one* theory of recovery. He seeks to stand with one foot upon the statute and the other upon his collateral. If one seems to fail in any respect, he rests upon the other, and *vice versa*. Under the facts of the case, these two steeds do not run together, nor are they complementary to each other. The operation of the statute will be considered in another division hereof. It is sufficient now to say that, if the plaintiff is entitled to recover upon his collateral, he has no need of the statute; and, if he is entitled to recover by virtue of the statute, he has no need of the collateral. If he is not entitled to recover upon his collateral *singly*, or upon the statute *singly*, he is not entitled to recover upon both *jointly*.

The defendant, having delivered his negotiable note to the corporation for his unpaid subscription, was *prima facie* liable upon the note to the corporation, in the absence of affirmative

1. CORPORATIONS: stockholders: liability on unpaid installments.

defense. If the corporation transferred that note to a holder in due course, the defendant was liable therefor, regardless of affirmative defense. Was he still liable to the corporation for his unpaid subscription? Manifestly not. The acceptance and

negotiation of the note by the corporation negatived the statutory liability for unpaid subscription, and left nothing upon which the statute could operate.

Disregarding the statute, therefore, for the moment, the plaintiff is entitled to recover upon his note if he is a holder in due course. If he is not such holder in due course, he is subject to the defense of fraud in the sale of the stock to the defendant. If he may ignore the note and sue as an assignee of the contract of subscription, on the theory that he has acquired the right of the corporation to sue its stockholder for an unpaid subscription, he is still a mere assignee, and is subject to any defense which would have been good against his assignor at the time of the assignment. It is immaterial whether the assignment be considered equitable or legal. He gains no ground, therefore, by his allegation that the indorsement of the note was intended as an equitable assignment of the subscription contract.

In so far, therefore, as the plaintiff relies upon his contract for collateral, he is under the burden of defense as against the charge of fraud in the inception of the transaction.

II. We proceed to inquire whether the statute creates a conclusive barricade in favor of the plaintiff against all defense which might otherwise exist in favor of the defendant. The statute in question comprises Sections 8394 to 8397, inclusive, and is as follows: ·

2. CORPORATIONS: stockholders: liability: fraud pleadable against corporate creditors.

"8394. Neither anything in this chapter contained, nor any provisions in the articles of corporation, shall exempt the stockholders from individual liability to the amount of the unpaid installments on the stock owned by them, or transferred by them for· the purpose of defrauding creditors; and *execution* against the company may, to that extent, be *levied* upon the private property of any such individual.

"8395. In none of the cases contemplated in this chapter can the private property of the stockholders be *levied* upon for the payment of corporate debts while corporate property can be found with which to satisfy the same; but it will be sufficient proof that no property can be found, if an *execution* has issued on a *judgment* against the corporation, and a demand has been thereon made of some one of the last acting officers of the

body for property on which to levy, and he neglects to point out any such property.

"8396. In suits by creditors to recover unpaid installments upon shares of stock against any person who has in any manner obtained such stock of the corporation, the stockholder shall be liable for the difference between the amount paid by him to the corporation for said stock and the face value thereof.

"8397. Before any stockholder can be charged with the payment of a *judgment* rendered for a corporate debt, *an action* shall be brought against him, in any stage of which he may point out corporate property subject to levy; and, upon his satisfying the court of the existence of such property, by affidavit or otherwise, the cause may be continued, or execution against him stayed, until the property can be levied upon and sold, and the court may subsequently render judgment for any balance which there may be after disposing of the corporate property; but if a demand of property has been made as contemplated in Section 8395, the costs of said action shall, in any event, be paid by the company or the defendant therein, but he shall not be permitted to controvert the validity of the *judgment* rendered against the corporation, unless it was rendered through fraud and collusion."

It will be noted that the statute permits an action to be brought against a stockholder by a creditor of the corporation. But such action is one which may be brought by a judgment creditor upon his judgment. His judgment against the corporation is made conclusive upon the stockholder. It is also made conclusive upon other stockholders, whom the defendant stockholder may later pursue for contribution. The statute does not purport to lay upon the stockholder the burden of defense against a claim not reduced to judgment against the corporation. The stockholder is often in no position to know the truth or falsity of an alleged claim asserted against the corporation. In the absence of an adjudication against the corporation, the stockholder might be rendered liable personally, through inability to *disprove* the claim, and yet might fail to recover contribution from other stockholders, through inability to *prove* it.

It is the purport of this statute, and is the general policy of the common law, that the unpaid subscription of a stock-

holder is a part of the assets of a corporation, and as such may be subjected to the payment of the corporate debts. This doctrine, however, does not preclude the stockholder from showing a defense of fraud as against the corporation in the sale of his stock; nor does it preclude him from showing the same defense as against a creditor who became such with knowledge of the equities as between stockholder and corporation. Such has been the holding of this court for many years, and such is the weight of authority. A bona-fide creditor of a corporation has a right to believe that the capital stock of a corporation has been fully paid in, and has a right to a remedy against the stockholder, if the fact proves otherwise. The statute operates in favor of the innocent creditor who has been misled, and gives no aid to one who has become a creditor with knowledge of the existing facts. We so construed Section 1082 of the Code of 1873 in *Callanan v. Windsor*, 78 Iowa 193. This holding was elaborated in *State Tr. Co. v. Turner*, 111 Iowa 664. In that case the plaintiff obtained a judgment against the corporation on a promissory note. He attempted to collect the same from a stockholder whose stock had been paid for only by the transfer of property at an excessive valuation. We held that the stockholder would be liable to an innocent creditor for such excess for which he had received credit, but that he was not liable to the plaintiff in that case, for the reason that the plaintiff, when he became a creditor, knew the facts pertaining to the stockholder's method of paying for the shares. In *Watt v. German Sav. Bank*, 183 Iowa 346, we reaffirmed our previous holding. In that case we said:

"(b) In any event, the German Savings Bank is not in a situation to assert the claim for unpaid portions of the face value of this stock, if not fully paid for; for that credit was extended to the Arizona Company with knowledge that the stock was issued without other consideration than stated. Recovery of a creditor from a stockholder for unpaid subscription for stock, or, in event of payment in property, for the undervaluation, is allowed on the theory that a fraud has been practiced on the creditor, who has the right, in dealing with the corporation, to assume that its stock is fully paid; and, of course, there can be no recovery where the creditor deals with full knowl-

edge that payment therefor has not been made."

The plaintiff herein purports to rely upon two cases: *Independent V. & S. Co. v. Iowa Merc. Co.,* 184 Iowa 154; *Lamb v. Bonesteel,* 186 Iowa 971.

We find nothing in either case that aids·the position of the plaintiff. In each of them a defrauded stockholder was permitted to rescind his stock purchased, even as against the receiver of the insolvent corporation. The saving concession of the discussion was that it did not appear in the record that any innocent creditor had acted in· reliance upon the subscription.

If, therefore, the plaintiff in this case chooses to rely upon the statute, he must still encounter the defense of fraud, because he loaned his money knowing the· facts pertaining to the method of payment accepted by the corporation from the defendant as stockholder. Whether he knew there was any fraud in the transaction is a question from which we withhold suggestion, lest it prejudice one party or the other upon the question of fact in a future trial.

There are other manifest obstacles that would confront the plaintiff if he should stake his case upon the statute. It is needless that we discuss them, further than to suggest them. Plaintiff's principal debtor, the corporation, is in bankruptcy. The statutory liabilities of stockholders for unpaid subscriptions are a part of the assets of the bankrupt corporation, and as such would be collectible by the trustee in bankruptcy for the benefit of the creditors. The statute is not preferential. The bankruptcy court, however, recognized the plaintiff as a secured creditor, and recognized his collateral ownership of defendant's note. Such was not a recognition of statutory preference or of statutory liability, but a recognition only of contractual right to the collateral. If the plaintiff had not contracted for his collateral, and was not holding the same under his contract, he could have asserted no statutory right of preference as a creditor, to subject the statutory liability of the defendant to the preferential payment of his claim. If he had no such right in the bankruptcy court, he has none here. This will sufficiently indicate the obstacles which arise against plaintiff's assertion

3. CORPORATIONS: stockholders: unpaid installments ·on stock: procedure to enforce.

of statutory right to recover from the defendant the unpaid portion of his subscription.

From whatever point of view, therefore, we consider the plaintiff's case, his right of recovery against the defendant, if any, is contractual, and nothing else; and we see no conclusive bar in his favor against a defense of fraud in the sale of this stock.

Upon this record, he is in a further dilemma. He is not entitled to recover judgment upon the note, because he has expressly disclaimed it as his cause of action. He is not entitled to recover as assignee of the contract of subscription, as distinguished from the note, because he has proved no assignment of such contract.

In directing a verdict for him, the trial court erred. The order to that effect is, therefore, reversed.—*Reversed.*

FAVILLE, C. J., and STEVENS, VERMILION, ALBERT, and MORLING, JJ., concur.